IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KING, J.D. A/K/A KINGCAST ANGUS UNDERFOOT | ) | CASE NO. 2:22-cv-01623-JCC |
| Plaintiffs, | ) | |
| v. | ) | JUDGE_____ |
| M & M PROPERTIES and MARK GRIMM, | ) | |
| Defendants. | ) | |

**COMPLAINT AND DEMAND FOR INJUNCTIVE RELIEF**

NOW COMES PLAINTIFF CHRISTOPHER KING to address a manifest history of racism in and around his personal abode for the past 2+ years.

**JURISDICTION, PARTIES, AND VENUE**

1..     Plaintiff CHRISTOPHER KING, JD, an African-American, resides the State of Washington. He is a former weekly news editor, daily news reporter and trial attorney. His general alter ego is known as "KingCast."  He currently has shows in development with several media outlets. He has earned a First Amendment Mayoral Commendation from the Mayor and Aldermanic Chamber in Nashua, NH (Key to the City) and has worked to change First Amendment Law with such personnel and has successfully litigated several housing discrimination cases (Appendix A).

2.     Plaintiff ANGUS UNDERFOOT (Caucasian ancestry) and Plaintiff King are Partners; Underfoot is a current resident and known Third Party Beneficiary to a Certain Agreement bearing their signature that will be seen shortly.

3.     Defendant MARK GRIMM is a white landlord who, *inter alia,* built and owns two duplex units at 715-721 E. 5th Street, Arlington, WA 98223.

4.     M&M Properties is the current entity who reportedly receives rent for the properties; Plaintiff formerly paid these monies in a very timely fashion to Park Place Properties until being directed to do so by Mark Grimm; Grimm recently claimed that Park Place was dissolved.

5.     This court has personal jurisdiction over all named defendants.

6.     Venue is proper.

1

SPECIFIC ALLEGATIONS

7.      Defendant Mark Grimm rented the unit at 721B to Plaintiff and two white men, Ben and Larry, during COVID, August 2020 at a rate of $2,550/mo.

8.      Ben was the initial and primary contact who found the property for the three (3) men. He will swear that Defendant Grimm screened him right off the bat:

"What is your ethnicity?"

"I dunno… largely Nordic, white guy."

"OK because we have a lot of niggers and Mexicans coming up here."

9.      Ben informed the others of the issue but they all voted to deal with the situation because they needed housing during COVID; they hoped it would subside.

10.     It did not subside and on multiple occasions over the next two years Ben informed Plaintiff that Defendant was dropping nigger-bombs. While this did not please Plaintiff – a former Assistant State Attorney and Civil Rights lawyer and current activist in his spare time – he sucked it up and even bought Grimm Christmas gifts and as a gearhead gave him a mint condition, rare Volvo brochure even though Grimm had used most of the garage space in their actual unit with one of his Volvos and two engines.[1]

11.     King once confronted Grimm in front of another neighbor on his use of nigger-bombs. King was on one of his motorcycles and clearly not a physical threat but Grimm alighted from his conversation in an angry and threatening manner and bellowed "I've never used that word in my life."

12.     A couple months later Grimm dropped another nigger-bomb in the garage whilst talking with Ben; King was nearby and got caught up in the conversation and ended up being a perfect gentleman and shaking Grimm's hand over it and accepting his apology even though he allegedly never used this word before. Ben was present during this exchange at all points in time and will testify to it; he already submitted a sworn statement saying as much to the Washington Human Rights Commission.

13.     The Commission issued a Charge Complaint that King notarized for prosecution; he withdrew it in Good Faith pursuant to settlement by and through area Attorney Joshua Dabling. More on this shortly.

---

[1] King is a BMW/SAAB guy but appreciates Volvos; he is friends with the family who owned a dealership from the 60's to the 90's; he grew up in them and owned one so he often tried to make peace with this racist through those means.

14. Grimm is the kind of landlord who never follows up on promises; a slumlord. He never fixed the dishwasher or microwave or fireplace fascia despite repeated promises, as the pictures clearly show. He also allowed leaking water heaters to go bad for so long that the one in Plaintiff's unit burst and Plaintiff and Ben and Larry helped him replace it. See below.









15.     More importantly, Grimm never provided the tenants with a copy of the Lease they signed (despite repeated requests) so King was unaware that the Lease stated subleasing was not allowed.

16.     Ben and Larry have already publicly stated however that Mark indicated to them that they could sublease, i.e. "It would be different if it was you guys."

17.     Defendant continued to make disparaging remarks about King that Ben, Larry and neighbors heard; on one occasion Grimm had to write an apology to King after he yelled at him like

a scolded dog after Ben, Larry and Plaintiff parked King's car in the driveway at 715A during a crime spree to fend off potential criminals.

18. A neighbor Rob – a provider of materials for the duplexes – saw the verbal attack and has verified to King that Grimm "is a slumlord jerk who never follows through on his promises."

19. Ben and Larry are buying property so they went mobile to save money. Plaintiff may join them later at such property but in the meantime he contended that Grimm did not treat him in the same manner as his white friends in terms of allowing subleasing; as such he subleased and by and through Counsel reached an Agreement – or allegedly reached an Agreement – that he would leave by 1 Jan 2023.

20. Plaintiff of his own volition actually dismissed his pending Complaint with the Human Relations Commission; HRC #31HR-0013-22-3; HUD # 10-22-9300-8. The focal point of the Complaint was the subleasing issue, along with the history of racial epithets and his treatment of Plaintiff.

21. The Agreement provided in pertinent part:

    C. Defendant Christopher King shall seek a dismissal of the discrimination claim.

    D. Plaintiff shall write a letter of recommendation for defendants stating at minimum that they paid their rents on time and kept the property in good repair (Appendix B)

23. Imbued with such knowledge Plaintiff located the unit of his rental dreams – just down the street in a lovely neighborhood – built on a nature preserve.

24. Time dragged on as Plaintiff and his Partner met all requirements except for "rental history" so Plaintiff provided a note from Defendant Grimm stating that Plaintiff paid rent on time and kept a nice house, all of which is absolutely true.

25. In fact, King was more timely than Ben, King was only late one (1) day during the entire two years because the USPS lost a huge check in the mail; King dutifully paid the $60 late fee and turned the other cheek; video taken with Defendant's knowledge will reveal that Grimm jumped down King's throat for being $100 short in April even though rent was not actually late at such time; more importantly he had allowed Ben to owe him $150 for a couple months![2]

26. Unfortunately Plaintiffs discovered via a speakerphone conversation with Maple Leaf that Defendants had communicated to them at least a week AFTER the Settlement Agreement that Plaintiff King had improperly subleased, a blatant willful and material breach of the Settlement Agreement even as Plaintiffs agreed to a $200 rent bump for November and December, 2022.

---

[2] For what it's worth, King paid the money right then and there; he had simply taken the wrong bank card to the ATM.

27.     It was and is a but-for reason for the denial as Plaintiffs met income and criminal and any other requirements.

28.     Interestingly enough, Plaintiff ran into Melissa, a former neighbor at 721A; she informed that Grimm refused their last months payment and was being dishonest; the same modus operandi that Plaintiff King discovered Defendant used years ago in *Grimm v. Jonas* Snohomish Superior 18-2-10633-31 (Appendix C).

28.     During a video with Plaintiff King and Ben and Larry Defendant Grimm stated that Plaintiff King is "hilarious… you're hilarious."  He also stated "You're never going to get over it are you?" This was a clear reference to Plaintiff King purportedly playing a racial game as Ben and Larry will concur under Oath.

29.     Let's see how funny this is.

https://www.youtube.com/watch?v=bFgFi-FgXV8&t

**Rolling Black in a White BMW on PNW Racism: When Your Landlord Drops the N-Bomb pt. 1.**





**Tina Beck**
To: Christopher King

Oct 14, 2022 at 8:10 AM
Details

## Application Status - Waiting for Rental Verification

Good Morning Christopher,

I am just waiting for your rental verification to be returned. You may want to reach out to your current landlord to let them know that the rental verification was emailed to them to complete.

Best,

Tina Beck, Property Manager/Broker
Maple Leaf Property Management
Real Estate Broker/Property Manager
425-343-7373 Direct Line



**Christopher King**
To: Tina Beck   Cc: rob@tricklerlaw.com,   Gus Underfoot   & 3 more
Yesterday at 2:09 PM
Details

### Re: Breach of Settlement Agreement 2 April 2022 video

Fine.

You can wait for the subpoena but thank you for supporting my contention that Mark Grimm violated the entire intent and Benefit of the Bargain with respect to his racist decision to allow Ben and Larry to sublease but not me. I dismissed my Civil Rights Complaint in Good Faith on this very issue.

Then he told you what he told you, thereby souring our relationship when it was clearly a But For Causal in your decline of our application.

If we don't reach resolution I can guarantee you I will be filing in Federal Court by Monday and a Subpoena will be issued to you immediately.

Best regards,

Christopher King, J.D.
617.543.8085m

> On Nov 7, 2022, at 1:37 PM, Tina Beck <tina@mapleleafmgt.com> wrote:
>
> Please stop sending these emails.
>
> We had to go by the information received from your landlord. As mentioned, I already have another application that has been accepted and has a move-in date.
>
> Best,
> <Outlook-ljjdsgxf.jpg>
> **Tina Beck**
> Real Estate Broker/Property Manager for 28 years
> **Maple Leaf Property Management**
> **& Real Estate LLC**
> Direct: 425-343-7373
> Tina@mapleleafmgt.com
> www.mapleleafmgt.com
> www.mapleleaffoundation.org
>
> ~ we tend to care ~

## 4 month sublet on Ben's room

Mark,
You say strictly business then let it be strictly business then.

But before we get there briefly:

First of all are you aware that there are several white people in my immediate family? Yah. I can assure you I don't cop a negative attitude towards any of them and in fact I encouraged one of my sisters to marry one of them, so you need to quit with this insinuation that I am playing some kind of race card when we know you drop N-Bombs up in my house OK?  And yes as a bona fide renter to you it is "our house" when it comes to essential legal rights of Quiet Enjoyment. Hearing N-Bombs in my house doesn't exactly provide for Quiet Enjoyment and as I told you before if I was sue happy it would have hit you long ago mate. Long ago. As I told you however I *AM* currently suing Inslee for a number of reasons that you and I might agree on but you don't want to talk about that.

Just **stop**.

In this business of renting your space I have not "used" anybody in this house as you claimed to Ben. Trust me he didn't want to get into it last night because he just bought a new truck and just didn't want to deal with it but if this goes further he is going to recount a lot of things you told him alone and Larry and him about me. The one nigger incident you apologized for in the garage is but one of many many things I have quietly lived with to keep the peace around here, including not receiving the Lease for 20 months. And no Larry and Ben **do not** believe you would have been so nonchalant if I owed you $150 as Ben did. No Way, No Sir, No How.

****

9

## FIRST CAUSE

42 U.S.C. §1981 – Disparate Treatment in a Contractual relationship based on race. Defendants have unlawfully and intentionally trammeled a Fundamental Right of Plaintiffs: To live – as an Interracial Couple – in the abode of their choice, free from the pernicious effects of societal Discrimination.

## SECOND CAUSE

Common Law Breach of Contract. The Defendants intentionally violated the Sine Qua Non of the entire Settlement Agreement and have unlawfully and intentionally trammeled a Fundamental Right of Plaintiffs: To live – as an Interracial Couple – in the abode of their choice, free from the pernicious effects of societal Discrimination.

## THIRD CAUSE

Breach of Right to Quiet Enjoyment.  Defendant MARK GRIMM, in his Individual and Corporate capacities engaged in a willful pattern of wanton racism, including this Breach and the use of nigger epithets after he knew that Ben had told Plaintiff King about it. This did then foreseeably cause Plaintiff King substantial emotional turmoil completely inconsistent with his Right to Quiet Enjoyment in his abode, as he clearly warned Defendants months ago (see above).

## JURY DEMAND

Plaintiffs hereby demand this Action be heard by a duly-empaneled Jury of appropriate size and composition.

_____

_____

**DEMAND FOR IMMEDIATE RELIEF**

Plaintiffs are now in a situation where their chosen area landlord will not deal with them; yet another potential Civil Rights violation but let's not go there right now.

WHEREFORE, Plaintiff requests relief on the following terms:

a. That this Court restrain and enjoin Defendants from enforcing any Writ of Restitution unless or until Plaintiffs and anyone residing at the Premises obtain housing.

b. That this Court ORDER that Defendants be enjoined from ever mentioning to anyone that Plaintiff subleased without authorization.

c. That this Court ORDER that Defendants provide a copy of any and all communications made to potential landlords be sent to duly-licensed Counsel for Plaintiffs.

d. That this Court ORDER that Defendants reimburse Plaintiff for all Attorney Fees to date.

e. That the Court ORDER Defendants to pay the costs of this Action.

f. That the Court ORDER Compensatory and Punitive Damages commensurate with the wrongs.

g. That the Court ORDER any and all other Relief as deemed appropriate.

Respectfully signed as if on Oath this 8th Day of November, 2022.

Angus Underfoot

_____
Plaintiff pro se


Christopher King, J.D.

_____
Plaintiff pro se